**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Emma Ferrell, *Trustee for the Next-of-Kin of Cortney Ferrell, deceased*, | Case No. 22-CV-01705 (JMB/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Waste Management Disposal Services of Colorado, Inc., Dwight Emery Esquibel, | |
| Defendants. | |

---

Matthew James Barber, James S. Ballentine, William R. Sieben, Schwebel Goetz & Sieben, P.A., Minneapolis, MN, for Plaintiff Emma Ferrell.

Thomas J. Basting, Jr., Brayanna Smith, Taft, Stettinius & Hollister LLP, Minneapolis, MN, Jacob M. Tomczik, McCollum, Crowley, Moschet, Miller & Laak, Ltd., Bloomington, MN, for Defendants Waste Management Disposal Services of Colorado, Inc. and Dwight Emery.

---

Defendant Dwight Emery Esquibel was working as an employee of Defendant Waste Management Disposal Services of Colorado, Inc. (WM Colorado), when the front loader he was driving struck and killed Cortney Ferrell. Plaintiff Emma Ferrell, trustee for the next-of-kin of Cortney Ferrell, sued Defendants, alleging that Esquibel's negligence caused Ferrell's death and that, because Esquibel was working within the course and scope of his employment with WM Colorado at the time of the accident, WM Colorado is vicariously liable for Esquibel's negligence. Defendants now move for summary judgment on Plaintiff's negligence claims. For the reasons set forth below, the Court denies Defendants' motion.

1

## BACKGROUND

At all relevant times, Ferrell was employed by Advanced Disposal Services Vasko Solid Waste, Inc. (ADS Vasko)[1] and Esquibel was employed by Defendant WM Colorado. (Doc. No. 25-1 at 6, 56, 60.)  WM Colorado is a Colorado corporation and indirect subsidiary of Waste Management, Inc. (WMI), a holding company.  (Doc. No. 22 at ¶ 8; Doc. No. 24 at ¶ 3.)  On October 30, 2020, WMI, through an indirect wholly owned subsidiary, acquired all outstanding shares of Advanced Disposal Services, Inc. and certain of its subsidiaries, including ADS Vasko.  (Doc. No. 22 at ¶ 4.)

Prior to the acquisition, WMI sought volunteers from its workforce to assist with providing "a seamless transition for the combined Waste Management and Advanced Disposal operations for customers and employees."  (Doc. No. 24 at ¶¶ 12–13.)  Esquibel volunteered.  (Doc. No. 25-1 at 9–10.)  Esquibel, as an employee of WM Colorado, came to Minnesota on approximately October 10, 2020,[2] and worked at a landfill.  (Doc. No. 25-1 at 10.)  On October 30, 2020, Esquibel was informed that he would begin work at a transfer station[3] located at 309 Como Avenue in St. Paul, Minnesota (the Transfer Station) on November 2, 2020.  (Doc. No. 25-1 at 10, 12; Doc. No. 24 at ¶ 20.)

---

[1] ADS Vasko is a subsidiary of Advanced Disposal Services, Inc.  (Doc. No. 22 at ¶ 4.)

[2] The exact date of Esquibel's arrival in Minnesota is not clear from the record.  (*Compare* Doc. No. 24-1 at 14 (October 12, 2020), *with* Doc. No. 25-1 at 9 (October 10, 2020).)

[3] The Transfer Station "is a facility where route drivers bring full collection vehicles to dump contents."  (Doc. No. 23 at ¶ 6; *see also* Doc. No. 22-1 at 7 (stating WMI and "other waste haulers" deposit waste at transfer stations).)

On the morning of November 2, 2020, Esquibel arrived at the Transfer Station, and Jose Erazo, an ADS Vasko employee, showed Esquibel "the layout of the place" and spent twenty to twenty-five minutes with him. (Doc. No. 25-1 at 10.) Esquibel and Ferrell had met one another in the break room that morning. (*Id.* at 15.)

Esquibel's job at the Transfer Station was to operate a front loader to load transfer trailers that carried trash out of the Transfer Station. (*Id.* at 11.) Ferrell was a driver for ADS Vasko who operated a "roll-off" truck, or route truck. (*Id.* at 58.) Roll-off trucks generally carry "demo" materials such as "two-by-fours, wood, shingles" and the like. (*Id.* at 13.) Ferrell's job was to deliver the collected "demo" to the Transfer Station tipping floor, unload it, and then leave.[4] (Doc. No. 23 ¶7; Doc. No. 25-1 at 11–12.) To unload the materials, Ferrell was required to step out of the truck for "a couple of minutes" so that he could "unchain and open the back gate." (Doc. No. 25-1 at 12, 15.) Erazo directed the roll-off truck drivers where and when to back up into the Transfer Station. (*Id.* at 10–12.) Minutes after starting work, while backing his front loader out of the trash pile, Esquibel struck Ferrell, who had stepped out of his truck to unchain the back gate on his truck. (Doc. No. 25-1 at 15, 61.) Ferrell later died from his injuries. (*Id.* at 60.)

Plaintiff initiated this action in Minnesota state district court and Defendants removed it to federal court. (Doc. No. 1.)

---

[4] Ferrell's job duties may have also included the collection of demo materials. (*See* Doc. No. 22-1 at 6; Doc. No. 23 at ¶ 6.) However, neither party articulates nor provides evidence establishing what Ferrell's job duties were outside of his work at the Transfer Station. Because the parties do not address this distinction, the Court assumes Ferrell's job duties were limited to his work at the Transfer Station for purposes of its analysis.

## DISCUSSION

Defendants now move for summary judgment on Plaintiff's claims, arguing that they are entitled to judgment as a matter of law because her claims are barred by the on the election of remedies provision of the Minnesota Workers' Compensation Act (MWCA), Minn. Stat. § 176.061. Because the record presented to the Court does not establish that WM Colorado and ADS Vasko workers were engaged in a common activity so as to implicate the common enterprise defense, the Court denies the motion.

As a threshold matter, courts grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the outcome of the suit, and a dispute is genuine if the evidence could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in their favor. *Id.* at 255. Further, on a motion for summary judgment, "the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008).

The MWCA mandates an election of remedies when a worker is injured "under circumstances which create a legal liability for damages on the part of a party other than the employer . . . at the time of the injury," when that third party carries proper workers' compensation insurance, and when the third party was engaged in a "common enterprise" with the injured worker's employer. Minn. Stat. § 176.061, subds. 1, 4. The party seeking

4

recovery "may proceed either at law against [the third] party to recover damages or against the employer for benefits, but not against both." *Id.*, subd. 1.

The parties agree that Plaintiff elected to receive benefits under the MWCA from Ferrell's employer, ADS Vasko, and that both ADS Vasko and WM Colorado were insured in accordance with the MWCA at the time of Ferrell's fatal injury. Consequently, Plaintiff is barred from recovering against Defendants—and Defendants are entitled to judgement as a matter of law and dismissal of Plaintiff's claims—only if there is no genuine dispute of material fact that WM Colorado and ADS Vasko[5] were engaged in a common enterprise when Ferrell was fatally injured. *See* Minn. Stat. § 176.061, subds. 1, 4.

To prevail under the common enterprise defense, Defendants must establish the following three elements: (1) the employers were engaged on the same project; (2) the employees were engaged in a common activity; and (3) they were subject to the same or similar hazards. *McCourtie v. U.S. Steel Corp.*, 93 N.W.2d 552, 556 (Minn. 1958). All three elements must be established for a "common enterprise" to exist. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 894 (Minn. 1996). As discussed below, the record precludes summary judgment because there remain questions of fact on the second element.[6]

---

[5] Because Esquibel was the only WM Colorado employee at the Transfer Station at the relevant time (Doc. No. 25-1 at 10), Esquibel and WM Colorado are used interchangeably. Similarly, the majority of the evidence pertains to Ferrell's job functions and, to a lesser extent, the acts of Erazo. Ferrell and Erazo are referred to by name for clarity, but both are considered, collectively, as ADS Vasko employees in the Court's analysis.

[6] The Court is also concerned that questions of fact remain as to the first and third elements. Regarding the first element, there is no history of a relationship between the employers in the record. While WM Colorado and ADS Vasko may have shared a goal in the operation of the Transfer Station, that was not clearly articulated, and Defendants' arguments rely on

"Whether employees were engaged in a common activity is a question that focuses on the functions performed by the employees, not on the goals of their employers." *LeDoux v. M.A. Mortenson Co.*, 835 N.W.2d 20, 22 (Minn. App. 2013). The common activity element of the common enterprise defense has three factors: "[1] the types of work performed, [2] the interdependence of the work, and [3] whether the work was closely coordinated." *Kelly v. Kraemer Constr., Inc.*, 896 N.W.2d 504, 509 (Minn. 2017).

First, to establish a common activity between two entities, the entities' employees must be engaged in "interdependent" activities, not merely overlapping ones. *O'Malley*, 549 N.W.2d at 895. In this case, Esquibel testified that at all relevant times he was in a front loader "loading the transfer trucks," and that different types of materials were deposited in different areas of the Transfer Station, with residential trash piled on one side and "demo," such as "two-by-fours, wood, [and] shingles," piled on the other. (Doc. No. 25-1 at 11–13.) This evidence demonstrates that the work activities Esquibel performed could be conducted in Ferrell's absence or at different ends of the tipping floor. Without additional evidence to the contrary, questions of fact remain on the extent to which the employees' activities here may be properly characterized as "interdependent."

---

the fact that ADS Vasko and WM Colorado had a shared corporate parent company, which does not factor into the common enterprise analysis. *See Gordon as Tr. for Martin v. Sappi N. Am., Inc.*, No. 23-2449, 2024 WL 340541 (8th Cir. Jan. 30, 2024). As to the third element, Ferrell's duties required him to exit his vehicle for at least a couple of minutes and walk on the tipping floor, and there is conflicting evidence as to whether Esquibel was ever subject to dangers associated with such an activity. (*See* Doc. No. 25-1 at 11–12, 14–15.) Esquibel's testimony indicates that if he ever had to leave his vehicle, it would only be to walk along a wall to assist the transfer truck driver, not to walk on the tipping floor. (*Id.* at 11.) Nevertheless, the Court need not address either of these two elements in light of its decision that questions of fact remain concerning the common activity element.

The common activity element also includes consideration of the types of work at issue. More precisely, for a common activity to be present, both sets of employees must participate in the same types of work. *McCourtie*, 93 N.W.2d at 559. Here, the record includes evidence that Esquibel was not involved in loading or unloading Ferrell's truck. (Doc. No. 25-1 at 14.) Nor does the record show that Ferrell was loading the transfer trucks or operating a front loader like Esquibel. (*Id.* at 12–13.) The record also does not establish that the materials Ferrel was dumping were the same as the materials that Esquibel was loading into transfer trucks. (*Id.* at 14, 65.) Although both Esquibel and the ADS Vasko employees were generally involved in waste management, so were all the other persons—whether employed by Defendants or not—who were present at the Transfer Station. The record, therefore, contains questions of fact concerning whether Esquibel was participating in the specific types of work that Ferrell and/or Erazo were engaged in.

Third, the Court considers whether Ferrell's and Esquibel's work was closely coordinated. *See O'Malley*, 549 N.W.2d at 896. The only evidence that Esquibel and Erazo or any ADS Vasko employee, coordinated their work is Esquibel's statement that, "[w]e'd basically communicate back and forth by—by eye contact or radio, and pretty much that's it." (Doc. No. 25-1 at 11.) Although it is not completely clear, Esquibel was likely referring to himself and Erazo, but this testimony does not address whether the communication was necessary to accomplish any tasks, divulge the content of this communication, or explain its context. *LeDoux*, 835 N.W.2d at 24 ("Although seeking specific advice might be part of an interdependent relationship, it satisfies the element only if it is as part of a broader pattern of cooperation."); *Carstens v. Mayers, Inc.*, 574 N.W.2d

7

733, 735–36 (Minn. App. 1998) (holding that assistance given as a "favor or an accommodation" does not amount to interdependence of employees' activities). Further, Esquibel testified that he was not being directed by anyone in the performance of his duties. (Doc. No. 25-1 at 11.) In contrast, Erazo was directing Ferrell and the roll-off trucks. (*Id.* at 11–12.) Without evidence that Erazo and Esquibel were communicating in an effort to coordinate their roles, or other engaging in any other coordination, the record precludes summary judgment.

The record presented, when viewed in the light most favorable to Plaintiff, contains questions of fact concerning whether Esquibel and Ferrell engaged in interdependent activities, performed the same types of work, or closely coordinated with each other. Defendants, therefore, have failed to establish the common activity element necessary for the common enterprise doctrine to bar Plaintiff's claims as a matter of law.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Defendants' motion for summary judgment (Doc. No. 18) is DENIED.

Dated:  August 14, 2024                     /s/ *Jeffrey M. Bryan*
                                                                              Judge Jeffrey M. Bryan
                                                                              United States District Court